BRIAN A. VOGEL (No. 167413)
LAW OFFICES OF BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, CA 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326
E-Mail: brian@bvogel.com

Attorneys for Plaintiff KRISTOPHER R. REVELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTOPHER R. REVELES, an individual, | Case No. 2:17-cv-01066 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | **1.    42 U.S.C. § 1983 (4th and 14th Amendments -Excessive Use of Force)** |
| COUNTY OF VENTURA; VENTURA COUNTY SHERIFF'S OFFICE; VENTURA COUNTY SHERIFF GEOFF DEAN, in his individual capacity; DEPUTY JASON FULLER; DEPUTY AMBER VOORHEES; DEPUTY MICHAEL SCHULTZ; and DOES 1 through 10, inclusive, | **2.    42 U.S.C. § 1983 Claims – Municipal Defendant Liability** **3.    42 U.S.C. § 1983 - Supervisory Liability** **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1

COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.      This is a complaint for money damages by Plaintiff, arising under 42 U.S.C. §§ 1983 and 1988.  Plaintiff seeks redress for deprivation of his rights, privileges and immunities, secured by the Fourth and Fourteenth Amendments to the United States Constitution.  This action arises out of an incident on February 13, 2015 in which the individual Defendant police officers detained, arrested, handcuffed, and then used excessive force against Plaintiff while he was in the throes of an epileptic seizure and unable to communicate clearly.  After he was handcuffed, Plaintiff was tasered twice and had a rip hobble applied to his feet while he was lying face down on the ground with a police officer straddling him and holding him down.

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction for this action is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1343, as it arises under 42 U.S.C. §1983.

3.      The acts complained of arose in the Central District of California. Therefore, venue properly lies here pursuant to 28 U.S.C. § 1391. Venue in this Court is also proper pursuant to 28 U.S.C. §1391(b)(1), in that one or more Defendants resides in, or has its principal place of business in, the Central District of California.

## PARTIES

4.      Plaintiff KRISTOPHER R. REVELES ("REVELES"), at all relevant times, was, and is, a resident of Thousand Oaks, Ventura County, California.

5.      At all times material herein, Defendant COUNTY OF VENTURA, ("COUNTY") was, and is, a public entity authorized by law to establish certain departments, responsible for enforcing the laws and protecting the welfare of the citizens of the COUNTY.  At all times mentioned herein, Defendant COUNTY was, and is, ultimately responsible for overseeing the operation, management, and

COMPLAINT AND DEMAND FOR JURY TRIAL

supervision of the VENTURA COUNTY SHERIFF'S OFFICE ("VCSO").
Defendant COUNTY is liable for the negligent and reckless acts of Defendants
JASON FULLER, AMBER VOORHEES, and MICHAEL SCHULTZ, as well as
other personnel employed at the VENTURA COUNTY SHERIFF'S OFFICE, as
described herein.

6.      At all times material herein, VCSO, was a public entity responsible for
providing law enforcement and detention services for Defendant COUNTY,
including the VCSO Patrol Services Division.

7.      At all times mentioned herein, Defendant VCSO was the duly authorized
law enforcement agency in and for the City of Westlake Village, California, and
was responsible for overseeing the operation, management, supervision and
training of the employees who provide law enforcement services in Westlake
Village, California, and is liable for the negligent and reckless acts of all
employees, personnel, and entities, including, but not limited to, Defendants
JASON FULLER, AMBER VOORHEES, and MICHAEL SCHULTZ, as well as
other personnel employed at the VENTURA COUNTY SHERIFF'S OFFICE, as
described herein.

8.      At all times material herein, Defendant VENTURA COUNTY SHERIFF
GEOFF DEAN ("DEAN"), was the chief deputy of VCSO, and was responsible
for supervising, operating, and managing VCSO employees and agents and was
further responsible for making, forming and maintaining the policies, practices
customs, and procedures used at VCSO by all VCSO employees and agents.  He is
being sued in his individual capacity.

9.      At all times material herein, Defendant JASON FULLER ("FULLER") was,
and is, a natural person, residing in the Central District of California and acting as
a duly appointed patrol deputy, under color of law, employed by Defendants
COUNTY and VCSO which is located in the Central District of California.

COMPLAINT AND DEMAND FOR JURY TRIAL

10.     At all times material herein, Defendant AMBER VOORHEES ("VOORHEES") was, and is, a natural person, residing in the Central District of California and was acting as a duly appointed patrol deputy, under color of law, employed by Defendants COUNTY and VCSO which is located in the Central District of California.

11.     At all times material herein, Defendant MICHAEL SCHULTZ ("SCHULTZ") was, and is, a natural person, residing in the Central District of California and was acting as a duly appointed patrol deputy, under color of law, employed by Defendants COUNTY and VCSO which is located in the Central District of California.

12.     Upon information and belief, Defendants DOES 1-10 were each responsible in some manner for the injuries and damages alleged herein. The true names and identities of Defendants DOES 1-10 are presently unknown to Plaintiff.  At all relevant times herein Defendants DOES 1-10 were employees and/or agents of COUNTY and/or VCSO. Defendant DOES 1-10 include, *inter alia*, COUNTY and/or VCSO deputies or supervising employees and/or agents who were involved in any manner in the incidents and legal claims for relief alleged in this Complaint. Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained.  Plaintiff is informed, believes, and based thereon alleges that each Defendant DOE herein is in some manner responsible for the injuries and damages suffered by Plaintiff REVELES.

## GENERAL ALLEGATIONS

13.     This action is brought under Title 42 U.S.C. §§1983, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution, and pursuant to the general laws of the United States.  Plaintiff alleges that he was assaulted, battered, tased and arrested by law enforcement deputies with excessive use of force, and that Defendants conspired to falsify evidence, wrote police reports containing

4

materially false descriptions of Plaintiff's actions, in order to prosecute him for crimes which he did not commit, and obstruct his access to justice.

14.    Defendants FULLER, VOORHEES, and SCHULTZ are being sued in their individual capacities. At the time of the acts complained, Defendants FULLER, VOORHEES, and SCHULTZ were duly-appointed VCSO deputies employed as such by Defendant COUNTY.  At the time of the acts hereinafter complained of, Defendants FULLER, VOORHEES, and SCHULTZ acted in the course and scope of their employment and acted under color of law.

15.    At all relevant times, Defendants COUNTY, VCSO and DEAN were ultimately responsible for the hiring, training, supervision, and discipline of Defendants FULLER, VOORHEES, and SCHULTZ, and were responsible for violation of Plaintiff's rights.

16.    At all relevant times, each Defendant was individually and jointly engaged in tortious activity, resulting in the deprivation of Plaintiff's constitutional rights and other harm.

17.    Plaintiff is informed and believes that each Defendant sued herein was responsible in some manner for the events as hereinafter described, and proximately caused injuries and damages to Plaintiff.

18.    Upon information and belief, Defendants DOES 1-10 were each responsible in some manner for the injuries and damages alleged herein.

### **FACTUAL ALLEGATIONS**

19.    On February 13, 2015, Plaintiff was working washing cars in the parking lot of the J.D. Powers and Associates building which is located at 2625 Townsgate Road, Westlake Village, California 91361 (Townsgate Building).  Plaintiff was employed by his uncle, Danny Luna, and had washed cars in this parking lot on numerous occasions in the past.

5

COMPLAINT AND DEMAND FOR JURY TRIAL

20.     Plaintiff has a documented medical history of suffering from focal epilepsy which is a chronic disorder marked by repeated seizures causing a sudden loss or change of consciousness.  Plaintiff has suffered both "absence" or "petit mal" seizures where a person's consciousness is briefly interrupted and some "atonic" seizures, where a person momentarily loses all consciousness.  Symptoms of absence seizures include staring into space, and may include movements such as blinking, chewing, lip-smacking or hand gestures. (See http://www.epilepsy.com/learn/types-seizures/absence-seizures)

21.     Plaintiff also suffers from a "postictal" state of confusion directly after suffering a seizure.  Postictal state is an altered state of consciousness after an epileptic seizure. It usually lasts between 5 and 30 minutes, but sometimes longer in the case of larger or more severe seizures, and is characterized by drowsiness, confusion, nausea, hypertension, headache or migraine, and other disorienting symptoms.

22.     Plaintiff was diagnosed with epilepsy when he was a teenager.  He is currently 28 years-old.  Plaintiff, like most people who suffer from epileptic seizures, recalls very little of the events associated with the seizure episode.

23.     Ventura County police, fire and paramedics were well aware of Plaintiff's epilepsy because he had had several prior seizure incidents in the years preceding this incident in which police, fire and/or paramedics responded and he was either arrested or taken to a hospital for treatment.

24.     At the time of the incident, Plaintiff was switching seizure medications from Phenytoin to Levetiracetam.  Because of a gap in MediCal coverage, Plaintiff had not taken any medication for his seizures for several days prior to the incident. This caused Plaintiff to suffer a seizure or seizures while he was at 2625 Townsgate Road, Westlake Village, California 91361.

COMPLAINT AND DEMAND FOR JURY TRIAL

25.     At approximately 1:30 p.m., Plaintiff left the parking lot and went inside the building from the entrance that abuts the 101 highway in order to go to the bathroom.  Plaintiff knew from prior experience that there was a freight elevator that could take him to the second floor bathroom.  When he got to the second floor, he realized that he was experiencing symptoms which caused him to recognize that he was about to have a seizure.  When this had occurred in the past he was able to get himself to a place where he could safely experience the seizure.  Plaintiff found the closest seat he could find and tried to write down a note asking for help and giving the phone number of his uncle who was outside washing cars.  Unfortunately, he was unable to complete the note by the time police arrived.

26.     At the time of the incident, Plaintiff was wearing a blue tank top and shorts and was unarmed.  Plaintiff was approximately 184 pounds and he is 5'9".

27.     One of the office occupants noticed Plaintiff sitting at an office desk where he did not belong and contacted the police for assistance with him.

28.     Defendants FULLER and VOORHEES were dispatched to the Townsgate Building, with FULLER arriving first.

29.     At the time, Defendant FULLER weighed 275 pounds.  Plaintiff is currently unaware of FULLER'S height.

30.     Defendant FULLER audio-recorded the interaction between Plaintiff and the police officers inside the Townsgate Building.  Defendants FULLER and VOORHEES failed to activate their audio recording devices throughout the incident.

31.     Defendant FULLER first encountered Plaintiff on the second floor where he was sitting. FULLER asked Plaintiff several questions about why he was there and whether he had identification.  Plaintiff was non-responsive because he was having a seizure.

COMPLAINT AND DEMAND FOR JURY TRIAL

32.    Defendant FULLER did not ask Plaintiff any questions related to ascertaining whether Plaintiff was undergoing a medical incident.  Defendant FULLER assumed that Plaintiff was under the influence of drugs.  Defendant FULLER also assumed that Plaintiff was refusing to speak rather than being physically unable to do so.  Defendant FULLER failed to follow VCSD, California Police Officer Training and Standards, and Crisis Intervention Team training, standard operating procedures, orders and directives regarding mentally disturbed people or people undergoing a medical crisis.

33.    Defendant FULLER was immediately and unjustifiably aggressive with Plaintiff.  While Plaintiff was in a non-responsive state, Defendant FULLER stated twice to Plaintiff, "If you elect to fight us - you are going to get hurt."  He then forcibly lifted Plaintiff out of the chair.  Defendants FULLER and VOORHEES handcuffed Plaintiff with no resistance by Plaintiff.  Defendant FULLER and VOORHEES continued to ask Plaintiff questions which he did not respond to.

34.    It appears from the audio-recording, Defendant FULLER did not understand why Plaintiff was non-responsive to his questioning and completely failed to recognize that Plaintiff was in the midst of a medical emergency.  FULLER also asked Plaintiff several times if he was high or on drugs.

35.    After FULLER had handcuffed Plaintiff, FULLER reached into Plaintiff's pockets and found a plastic lighter.  FULLER threw the lighter onto the ground. Plaintiff reached down to pick it up, and FULLER jerked him away and stated, "don't worry about that - it's garbage".   Plaintiff spoke for the first time and asked FULLER to relax. FULLER told Plaintiff that he should relax and that he was not the one running the show.

36.    While Defendants FULLER and VOORHEES were walking Plaintiff to the elevator to go downstairs, Plaintiff went limp.  Defendant FULLER applied a pain compliance control hold to Plaintiff, who remained handcuffed.  FULLER and

COMPLAINT AND DEMAND FOR JURY TRIAL

VORHEES dragged him to the elevator while continuing the pain compliance hold.  The Defendants were pulling him, squeezing his arm tightly, and twisting his handcuffed wrists.

37.     Before getting on the elevator, Defendant FULLER twisted Plaintiff's arm enough to cause Plaintiff to cry out in pain and ask FULLER to stop.  Defendant FULLER asked, "Are you going to go with the program?" while twisting his arm even though Plaintiff was not resisting.  Any movement by Plaintiff was clearly in response to the pain caused by FULLER's twisting his arm.  Plaintiff repetitively cried out in pain while telling FULLER to stop twisting and squeezing his arm and his wrist.  This caused FULLER to twist it even more while saying, "How's that working for you?"

38.     When VOORHEES asked Plaintiff "what his deal was", Plaintiff responded, "he's squeezing my wrists."  Defendant VOORHEES also asked him what he had smoked that day, also erroneously assuming that Plaintiff was on drugs, rather than experiencing a medical emergency.

39.     In the elevator, Defendant FULLER asked Plaintiff, "what did you smoke today?"  Defendant FULLER continued to twist Plaintiff's arm.  He told Plaintiff to "shut his mouth" when Plaintiff said he was not doing anything and asked FULLER to stop yelling at him.  Defendant FULLER pushed Plaintiff's head into the corner of the elevator and said that he was going to throw Plaintiff to the ground in a minute.  Plaintiff continued to ask FULLER to stop twisting his arm, stop pushing his head into the corner, and stop yelling at him.  In response, Defendant FULLER told him to "stop being a bitch" and then started to force Plaintiff to get on the ground.

40.     Soon thereafter, the elevator reached the first floor and the elevator door opened.  There are two surveillance cameras in the Townsgate Building lobby

9

---

COMPLAINT AND DEMAND FOR JURY TRIAL

which captured the interaction between Defendants FULLER, VOORHEES and Plaintiff as they exited the elevator into the lobby.

41.     The video shows FULLER with his hands around Plaintiff's throat.  Then Defendant FULLER drew back his right hand, made a fist and drew it close to Plaintiff's face as if he was going to punch him.  Defendant VOORHEES joined FULLER in forcing Plaintiff to the ground.  During the struggle, FULLER was behind Plaintiff and holding on to him with both hands.  VORHEES approached and grabbed Plaintiff in the upper torso area and pulled him to the right and towards the ground.  At this time, Fuller's legs became intertwined with Plaintiff's legs while and he fell to the ground.  FULLER injured his right knee and remained on his back throughout the rest of the incident.  While still at the scene, FULLER explained "when we went to the floor, my knee folded the wrong way."  He stated, "it's my right knee - went out - folded back."

42.     While FULLER was falling down, Defendant VOORHEES pulled Plaintiff down to the ground a few feet away from FULLER. Plaintiff landed on his back.

43.     While Plaintiff was on his back and VOORHEES was kneeling over him, she was able to call for back-up and an ambulance.  VOORHEES then began hitting Plaintiff and he asked her repeatedly to stop.  VOORHEES then commanded Plaintiff to get on his stomach and threatened to tase him if he failed to comply.  VOORHEES then flipped Plaintiff over onto his stomach.  It was only after flipping Plaintiff onto his stomach that Defendant VOORHEES tased Plaintiff.  She tased Plaintiff with her taser pressed to his back while she was on his back.  The taser probes plunged deeply into Plaintiff's skin and high voltage electricity surged through his body.

44.     One of the taser probes was so deeply embedded into plaintiff's skin that it required a doctor to safely remove it at the hospital.

COMPLAINT AND DEMAND FOR JURY TRIAL

45.     After he was tasered, Plaintiff cried out in pain and begged her to stop.  He yelled, "I have seizures!  Please stop, I have seizures!" Plaintiff continued to state that he had not done anything wrong and that FULLER had been twisting his arm.

46.     While VOORHEES was still on top of Plaintiff, he complained that she was crushing his knee and genitals.  She replied, "I don't care what I'm smashing right now."  Approximately three minutes after she tased him the first time, and while she was still on top of Plaintiff, VOORHEES pressed the taser button again which sent high voltage electricity through his body a second time.  When Plaintiff protested being tasered again while handcuffed and on the ground, Defendant FULLER laughed.

47.     At the time Defendant SCHULTZ arrived, Plaintiff was subdued and was not kicking or moving.  Defendant VOORHEES was straddling Plaintiff who was face down on the ground after at least two taser full taser cycles. Nonetheless, Defendant SCHULTZ placed a rip hobble on Plaintiff's ankles which caused him additional pain and discomfort. Defendants left Plaintiff in this position for approximately 30 minutes.

48.     After she took Plaintiff to Los Robles Hospital for a medical clearance, VOORHEES placed Plaintiff in the back of a squad care and interviewed him. This interview was video-recorded.  During this interview, Plaintiff explained that he was suffering from a seizure or seizures when he went inside the building. VOORHEES' comments in this interview indicate that the only type of seizure she was familiar with was grand-mal seizures with convulsions.

49.     Despite having knowledge that Plaintiff was suffering from seizures which explained his non-responsive and confused behavior, she arrested him on felony charges of violation of Penal Code section 69 which provides, in relevant part that: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer

COMPLAINT AND DEMAND FOR JURY TRIAL

by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty."

50.    On August 18, 2015, the Ventura County District Attorney's Office charged Plaintiff in Ventura County Case No. 2015004820 with a misdemeanor violation of Penal Code § 148(a)(1) – resisting arrest.  On April 19, 2016, the complaint was amended to add a misdemeanor violation of Penal Code § 148.10(a) – resisting arrest resulting in serious bodily injury.  Plaintiff pled not guilty to the complaint, and, after a series of continuances, the jury trial commenced on November 3, 2016. Plaintiff was acquitted on both counts on November 9, 2016.

51.    Plaintiff suffered physical injuries as a result of Defendant FULLER, VOORHEES, and SCHULTZ'S use of force on him, including but not limited to, wounds caused by the taser probes and bruises.

52.    Plaintiff also suffered emotional distress resulting from the incident.

### FIRST CLAIM FOR RELIEF

**Violation of Civil Rights: Excessive Use of Force**

**(42 U.S.C. § 1983/4th and 14th Amendments)**

**Against Defendants FULLER, VOORHEES, SCHULTZ, and DOES 1-10**

53.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as though set forth herein *verbatim*.

54.    Plaintiff brings this cause of action under 42 U.S.C. § 1983, as against Defendants FULLER, VOORHEES, SCHULTZ, and DOES 1-10.

55.    This action arises under 42 U.S.C. §§ 1983 and 1988, the United States Constitution, and common law principles.  By engaging in the conduct described hereinabove, Defendants FULLER, VOORHEES, SCHULTZ, and DOES were acting or pretending to act, under the color of state law as deputies employed by Defendant VCSO, and violated Plaintiff REVELES' civil rights afforded to him under the United States Constitution, including his right to be free from excessive

12

and unreasonable force in violation of his rights protected under the Fourth and Fourteenth Amendments.

56.     As a direct and proximate result of Defendants' and DOES' wrongful conduct described hereinabove, Plaintiff REVELES suffered physical and emotional injuries, including but not limited to, taser wounds, lacerations, abrasions, and scarring.

57.     Plaintiff REVELES has suffered special and general damages as allowable under federal law in an amount to be proven at trial. These injuries and damages are ongoing.

58.     Plaintiff is informed, believes, and based thereon alleges that by engaging in the conduct alleged herein, Defendants FULLER, VOORHEES, SCHULTZ, and DOES acted with the intent to injure, vex, annoy and harass Plaintiff REVELES, and subjected Plaintiff REVELES to cruel and unjust hardship in conscious disregard of Plaintiff REVELES' rights, with the intention of causing Plaintiff REVELES injury and depriving him of his constitutional rights.

59.     As a result of the foregoing, Plaintiff REVELES seeks exemplary and punitive damages against Defendants FULLER, VOORHEES, SCHULTZ, and DOES.

60.     Further, as a result of the foregoing, Plaintiff REVELES seeks an award of reasonable attorneys' fees and costs according to proof, pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claims (Municipal Liability Claims -
### Deliberate Indifference and Failure to Supervise, Train and Hire)
### Against Defendants COUNTY, VCSO, DEAN, and DOES

61.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as though set forth herein *verbatim*.

COMPLAINT AND DEMAND FOR JURY TRIAL

62.     Plaintiff brings this cause of action under 42 U.S.C. § 1983, as against Defendants COUNTY, VCSO, DEAN, and DOES.

63.     Defendants FULLER, VOORHEES, and SCHULTZ's violations of Plaintiff REVELES' Fourth and Fourteenth Amendment rights to be free from excessive use of force, unlawful seizure, and deprivation of liberty, as set forth herein, were the direct and proximate results of Defendants COUNTY, VCSO, DEAN, and DOES' maintaining longstanding customs, policies, practices and/or procedures which tolerate and condone Defendants FULLER, VOORHEES, and SCHULTZ's violations, as set forth herein.

64.     These longstanding customs, policies, practices and/or procedures, include, but are not limited to, Defendants COUNTY, VCSO, DEAN, and DOES's standard operating procedures as well as accepted practices.

65.     Said customs, policies, practices and/or procedures include, *inter alia*: an ongoing pattern of condoning and having a deliberate indifference towards citizens' constitutional rights in connection with the following acts committed by VCSO deputies: (1) the use of excessive force or violence in a reckless and unreasonable manner; (2) unconstitutional seizures and deprivations of liberty; (3) the conforming of false testimony, evidence or reports by all deputies involved in an incident to protect one or more of them from criminal prosecution or administrative discipline and/or to allow for malicious prosecution; (4) the performance of sham or deficient investigations of allegations of deputy misconduct designed to allow deputies' misconduct to escape detection by superiors and/or superiors who guide or shape the investigation to support a result exonerating the involved deputies; (5) the planting of evidence or withholding evidence to favor the involved deputies' version of a disputed and complained of incident of police misconduct; (6) the ratification of misconduct to avoid referral

14

COMPLAINT AND DEMAND FOR JURY TRIAL

for criminal prosecution; and (7) the public denial or minimization of rampant problems of dishonesty and brutality within VCSO.

66.     The policy-makers for the deputies of Defendant VCSO at the time of the incident were Defendant DEAN and DOES.  As such, they had the duty to make and maintain customs, policies, practices and/or procedures which address and cure the problems of use of excessive force and other civil rights violations committed by VCSO deputies in general.  Rather than creating or maintaining such customs, policies, practices and/or procedures, Defendant DEAN and DOES created and maintained policies and practices which caused a deliberate indifference toward Plaintiff REVELES' constitutional rights as well as citizens' constitutional rights in general and caused harm to Plaintiff REVELES by condoning deputy commissions of violations including excessive use of force, unreasonable seizure and the deprivation of liberty.

67.     The above described customs, policies, practices and/or procedures demonstrate a deliberate indifference on the part of the policy-makers of Defendants COUNTY and VCSO to the constitutional rights of persons within COUNTY, and were a moving force behind the violations of Plaintiff REVELES' rights alleged herein.

68.     Plaintiff is informed, believes, and based thereon alleges that Defendants COUNTY, VCSO, DEAN, and DOES knew, or in the exercise of reasonable care should have known prior to February 13, 2015, that VCSO deputies, including Defendants FULLER, VOORHEES, SCHULTZ, and DOES, were engaging in the conduct described hereinabove.

69.     Plaintiff is informed, believes, and based thereon alleges that Defendants COUNTY, VCSO, DEAN, and DOES knew, or in the exercise of reasonable care should have known, prior to February 13, 2015, that VCSO deputies, including Defendants FULLER, VOORHEES, SCHULTZ, and DOES, had a history,

COMPLAINT AND DEMAND FOR JURY TRIAL

propensity, pattern and practice of adhering to the unlawful and unconstitutional police actions described herein and above.

70.     Notwithstanding this information and the history of VCSO deputies including Defendants FULLER, VOORHEES, SCHULTZ, and DOES, Plaintiff is informed, believes and based thereon alleges that Defendants COUNTY, VCSO, DEAN, and DOES failed to properly screen applicants and hired persons who were psychologically unfit for duty and used unreasonable police tactics, which led to the constitutional violations of Plaintiff REVELES' constitutional rights as alleged herein and above.

71.     Plaintiff is informed, believes, and based thereon alleges that Defendants COUNTY, VCSO, DEAN and DOES generally failed to train and supervise VCSO deputies, including Defendants FULLER, VOORHEES, and SCHULTZ and DOES, in order to halt and prevent the type of conduct which resulted in violating Plaintiff REVELES' constitutional rights.

72.     Plaintiff is informed, believes, and based thereon alleges that Defendants COUNTY, VCSO, DEAN, and DOES have customs, policies or practices which condone and/or ignore misconduct of VCSO deputies and fail to impose discipline. As a result, the custom, practice or policy results in the retention of deputies such as Defendants FULLER, VOORHEES, SCHULTZ, and DOES who have a propensity to cause constitutional violations such as use of excessive force, unreasonable seizure, liberty deprivations and falsification of evidence.  This failure to discipline condones, ratifies, promotes and perpetuates VCSO deputies' misconduct and their "code of silence" and was a moving force behind the violations of Plaintiff REVELES' constitutional rights.

73.     Plaintiff is informed, believes, and based thereon alleges that Defendants COUNTY, VCSO, DEAN, and DOES expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions alleged herein, and knew that such

COMPLAINT AND DEMAND FOR JURY TRIAL

conduct was unjustified and would result in violations of Plaintiff REVELES' constitutional rights.

74.    As a result of the foregoing, Plaintiff REVELES was subjected to physical and emotional injuries that were a direct and proximate result of Defendants COUNTY, VCSO, DEAN, and DOES' failure to maintain customs, policies, practices or procedures designed to protect the constitutional rights of the public.

75.    Defendants COUNTY, VCSO, DEAN, and DOES expressly or tacitly encouraged, ratified, and/or approved of the acts and/or omissions of the Defendant deputies alleged herein, and knew that such conduct was unjustified and would result in violations of Plaintiff REVELES' constitutional rights.

### **THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1983 (Supervisory Liability)**

**Against Defendant DEAN and DOES**

76.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as though set forth herein *verbatim*.

77.    This Count arises under 42 U.S.C. § 1983, and is brought against Defendant DEAN and DOES as individuals.

78.    A supervisor may be individually liable if there exists a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Supervisory liability exists even without overt personal participation in the offensive act, if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.

79.    DEAN was and is a supervisor of Defendants FULLER, VOORHEES, and SCHULTZ.

80.    On information and belief, Defendant DEAN and DOES are responsible for making and maintaining the policies and practices of the Defendant VCSO.

COMPLAINT AND DEMAND FOR JURY TRIAL

Defendant DEAN is responsible for ensuring that independent investigative and review procedures are in place, that measures are taken to sufficiently investigate the statements and reports of VCSO deputies, and to ensure that false statements are discovered and that their authors are disciplined and retrained.  Defendant DEAN is also responsible for ensuring that policies and procedures are in place for independent review of the circumstances of force used by VCSO deputies, and ensuring that when deputies use excessive force, they are disciplined and retrained.

81.     On information and belief, Defendant DEAN is aware that the current policy and procedure for independently reviewing deputies' statements and reports concerning arrests and the use of force is insufficient, and that there is no policy or procedure for independent review or sufficient investigation of the claims made by deputies following an incident of excessive use of force. On information and belief, Defendant DEAN has taken no measures to implement any form of independent review or sufficient investigatory procedure. On information and belief, Defendant DEAN maintains a policy and practice of ratifying claims made by deputies after an incident without any independent review or other sufficient investigatory measure. On information and belief, Defendant DEAN maintains a policy and practice within the VCSO of "rubber stamping" deputies' versions of events, such that deputies rely on the practice and custom that false statements will neither be investigated nor unearthed.

82.     On or before February 13, 2015, and for some time prior thereto and since that time, Defendant DEAN and DOES have either participated in, or known of, or should have known of, their subordinates excessive use of force, witness intimidation, suppression of evidence, falsification of evidence, and noncompliance with VCSO's policy as to use of force and investigations of use of force incidents.

18

COMPLAINT AND DEMAND FOR JURY TRIAL

83.     On information and belief, Defendant DEAN and DOES are aware of numerous citizen complaints and lawsuits filed alleging excessive force by VCSO deputies and Defendant DEAN and DOES have taken no measures to implement any policy or procedure to ensure that said complaints are adequately and independently investigated or that deputies who engage in the use of excessive force are disciplined or retrained. The policies, customs and practices created and maintained by Defendant DEAN and DOES are relied on by VCSO deputies, who believe that they are permitted to use excessive force with impunity.

84.     By failing to implement any of the aforementioned constitutionally adequate policies, by maintaining a culture of impunity for excessive force and by rubber stamping reports containing false statements, Defendant DEAN and DOES were the moving force behind the conduct of Defendants FULLER, VOORHEES, and SCHULTZ and DOES, when they unlawfully arrested Plaintiff REVELES, used excessive force against him, and conspired to commit these violations against him because said Defendants believed that such conduct was, and is, permissible in the VCSO.

85.     In engaging in the conduct alleged herein, Defendant DEAN and DOES acted with the intent to injure, vex, annoy and harass Plaintiff REVELES, and subjected Plaintiff REVELES to cruel and unjust hardship in conscious disregard of Plaintiff REVELES' rights, with the intention of causing Plaintiff REVELES injury and depriving him of his constitutional rights.

86.     Plaintiff REVELES seeks compensatory damages, including emotional distress, punitive damages, attorney's fees and costs.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, on each and every cause of action as follows:

1.     For general damages according to proof at trial;

19

COMPLAINT AND DEMAND FOR JURY TRIAL

2.      For special damages according to proof at trial;

3.      For an award of punitive damages against Defendants FULLER, VOORHEES, SCHULTZ, DEAN, and DOES;

4.      For declaratory and injunctive relief;

5.      For attorney's fees and costs under 42 U.S.C. § 1988, or under any other applicable statutes or law;

6.      For an award of Plaintiff's costs of suit incurred herein;

7.      For an award of any applicable statutory penalties;

8.      For an award of any applicable interest amounts; and

9.      For any other relief the Court deems appropriate.

        Respectfully submitted,

Dated: February 8, 2017          LAW OFFICES OF BRIAN A. VOGEL, PC


                                 By:              /s/
                                 BRIAN A. VOGEL
                                 Attorney for Plaintiff
                                 KRISTOPHER R. REVELES


                        **DEMAND FOR JURY TRIAL**

        Plaintiff hereby demands a jury trial.

Dated: February 8, 2017          LAW OFFICES OF BRIAN A. VOGEL, PC


                                 By:              /s/
                                 BRIAN A. VOGEL
                                 Attorney for Plaintiff
                                 KRISTOPHER R. REVELES

COMPLAINT AND DEMAND FOR JURY TRIAL